## Ex Parte James Slaren.

1. Municipal By-laws. — The power of municipal corporations to make by-laws is necessarily subject to all limitations imposed by the Federal and state Constitutions, the general laws of the state, and the provisions of their respective charters.

2. Same — Taxing Power. — The Constitution of this state empowers the Legislature to impose occupation taxes, but inhibits counties, cities, and towns from taxing occupations more than half the amount levied thereon by the state. The general law of the state levies annually, "for every livery or feed-stable, one dollar for each stall and one dollar for each hack, buggy, or other vehicle," but imposes no specific tax on public vehicles other than those pertaining to livery and feed-stables. The city of Houston levied an annual tax of $25 on every "vehicle for transporting passengers or baggage, drawn by two animals." *Held*, that this city tax violates the limitations imposed on municipalities by the Constitution and the general law of the state, and is, therefore, void.

3. Police Powers. — The authority of municipalities to adopt police regulations, and to collect taxes adequate to enforce them, is not impugned.

Habeas Corpus sued out to the Court of Appeals.

The opinion discloses the case.

*Barziza & Oliver*, for the relator.

*John H. Duncan*, City Attorney of Houston, *contra.*

Winkler, J.   The applicant shows by his petition for *habeas corpus* that he is the owner and driver of a public hack, or carriage, drawn by two animals, for the transportation of passengers in the city of Houston for hire; that he was arrested by the city marshal, and carried before the recorder of the city, and by the recorder fined $10 and costs, under *section five* of the city ordinances; that thereupon the recorder issued to the marshal a warrant of commitment, under which he alleges he is now illegally restrained of his liberty by F. N. Butts, the marshal.   To his petition he attaches, as exhibits, copies of the order of the recorder and his warrant to the city marshal, ordering

the arrest of the applicant, and a copy of the ordinances of the city "prescribing the taxes and licenses to be assessed and collected by the city of Houston for the year 1878," alleged to contain whatever of authority exists for the proceeding had against the applicant, and which he alleges are void, because violative of the Constitution and laws of the state and the charter of the city; and, wherefore, he prays to be discharged.

The city marshal, in his return of the writ of *habeas corpus*, says that said writ was served on him on February 6, 1878; "that it is true that he holds James Slaren in custody; that he holds him by virtue of a warrant of commitment issued by Nathan Fuller, recorder of the city of Houston, which warrant of commitment is hereto attached, marked 'Exhibit A,' and made part of this return."

The warrant attached, marked "Exhibit A," is as follows: "*State of Texas, county of Harris. City of Houston, Recorder's Court, January 30, 1878:*

"To the sheriff of Harris County, greeting: You are hereby commanded to receive, and place in jail, James Slaren, tried and convicted of the offense of violating city ordinance by failing and refusing to procure a license on his hack, and sentenced to pay a fine of ten dollars and all costs of court, to wit, five dollars and fifty cents, and him safely keep until he shall pay said fine and costs, or satisfy the same at the rate of seventy-five cents per day of imprisonment.

"Given under my hand, at office, this, the 30th day of January, 1878.

[Signed]                              "NATHAN FULLER,
                                    "*Recorder City of Houston.*"

By agreement of parties the appearance of the applicant before the court, pending the case, is waived, and the facts are agreed to in writing, the city marshal being represented by the city attorney. The case is presented here

free from legal quibble or technical objection by the counsel on either side, on a fair and lucid presentation, each of his own views, on the only question in the case worthy of special notice. By *section four* of the city ordinance above referred to it is provided that there shall be levied on and collected from "every person, firm, company, or association of persons pursuing any of the following-named occupations an annual tax, except where herein otherwise provided, on every such occupation or separate establishment, as follows: * * * From each public hack, wagon, carriage, or other vehicle for transporting passengers or baggage, drawn by two animals, $25 [twenty-five dollars]."

There is no controversy that the charge upon which the applicant was tried before the recorder, and fined, and upon which the warrant of commitment was issued under which the city marshal holds the applicant, was for having failed and refused to pay the tax of $25 imposed by the ordinance, section 4, as above set out, so that the only question raised by the pleadings, the agreed case as to the facts, and by the argument of counsel in the case is, Had the City Council of the city of Houston power and authority under the Constitution and laws of the state, and the Charter of the city granted by the Legislature, to impose and enforce, by fine and imprisonment, the payment of the tax of $25 against the applicant, as herein stated?

The city attorney, representing the respondent, invokes the provisions of *section five* (sec. 5) of the same ordinance which imposes the tax, which provides: "That all occupation taxes for the current year shall be paid on or before the 15th day of January, and it is hereby made the duty of the assessor and collector of taxes of the city of Houston, or the city marshal and police officers, to demand an exhibit of the license; and if any person, firm, or association of persons, shall engage in any trade, profession, business, calling, avocation, or occupation, within the limits of said

city of Houston, upon which, by ordinance of said city, a license or occupation tax has been imposed, without having first paid in United States currency the amount of said tax or license to the assessor and collector of taxes of the city of Houston, and obtained therefor a license in writing from the mayor, upon complaint duly made to the city recorder by said assessor and collector or city marshal, or other person cognizant of the fact, he, she, or they so offending shall, on conviction thereof, be fined by said city recorder in the sum of not less than ten dollars and not more than fifty dollars, and to a further fine of ten dollars for each and every day thereafter said violation may continue."

The power of municipal corporations to make by-laws, says Mr. Cooley, in his work on Constitutional Limitations, page 189, is limited in various ways : " First, it is controlled by the Constitution of the United States and of the state. The restrictions imposed by these instruments, and which directly limit the legislative power of the state, rest equally upon all the instruments of government created by the state. * * * Whatever the people, by the state Constitution, have prohibited the state government from doing it cannot do indirectly."

The Constitution has placed limitations upon the taxing power, not only of the state government, but upon the governments of counties, cities, and towns. Section 9 of article 8 provides as follows : " The state tax on property, exclusive of the tax necessary to pay the public debt, shall never exceed fifty cents on the one hundred dollars valuation ; and no county, city, or town shall levy more than one-half of said state tax, except for the payment of debts already incurred, and for the erection of public buildings, not to exceed fifty cents on the one hundred dollars in any one year, except as in this Constitution is otherwise provided."

The general power of the state is found in the 1st section of the 8th article of the state Constitution. By it authority

is given to the state government, among other things, to impose *occupation taxes*, but by the proviso at the end of the section this restriction is imposed upon counties, cities, and towns, in the following emphatic language : " The occupation tax levied by any county, city, or town, for any one year, on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the state for the same period on such profession or business."

Another rule laid down by Mr. Cooley (pp. 198, 199) is this : Municipal by-laws must also be in harmony with the general laws of the state, and with the provisions of the municipal charter. Whenever they come in conflict with either, the by-law must give way. The only expression of the legislative will on the subject, since the adoption of the Constitution of the state now in force, indicating a tax on the occupation of the applicant, is found in the general law regulating taxation and to fix the rate of the same (Acts 1876, p. 242, and following), the 3d section of which act imposes an occupation tax upon the keepers of livery or feed-stables of $1 for each stall, and $1 for each hack, buggy, or other vehicle. There is no intimation in the act expressive of an intention on the part of the Legislature to tax, *eo nomine*, the hack or carriage of any person other than those kept in livery or feed-stables ; but, if the language employed is susceptible of being so construed as to embrace the hacks, carriages, and other vehicles kept and used for the purpose of transporting baggage and passengers, for hire, other than the ones mentioned in the statute, certainly the language could not be held to be broad enough, except by analogy, to subject private individuals to the payment, on a similar occupation to those mentioned in the statute, of a similar tax to that imposed by the statute. Certainly it could not be held to mean that the Legislature ever intended to say that they, by the act in question, had given, even by remote implication, any authority for the imposition

upon such person, or such occupation, of a tax of $50, which it must be held they have done in order to sustain the imposition of the tax of $25 on this applicant, and which we would be compelled to do in order to harmonize the ordinance of the city of Houston, which imposes the tax, with the provision of the Constitution and the act above set out, and avoid the constitutional inhibition against counties, cities, and towns for imposing a greater tax than one-half the amount levied by the state. And see, also, amended Charter of the city of Houston, which limits the City Council, in the imposition of taxes and licenses, to an amount not to exceed one-half the amount levied by the state. Special Laws 1876, p. 47, sec. 9, reënacting sec. 31

A consideration of this case does not involve the question as to the power of the Legislature to confer, by charter, to a municipal corporation, powers seemingly in conflict with other general laws. For a discussion of this subject see *Davis* v. *The State*, 2 Texas Ct. App. 425. Nor does it involve a consideration of the authority of the city to provide by ordinance regulations to regulate the manner of using hacks, carriages, and other vehicles, as a police regulation, such as safety and good order may require, and to impose a sufficient amount of tax to meet the legitimate expense of keeping up such police regulations over the subject.

We are of the opinion, however, that the ordinance of the city of Houston which imposes upon the applicant an occupation tax of $25 for running a two-horse hack in the city, for hire, and for an alleged violation of which he is now restrained of his liberty by the marshal of the city, under process issued by the city recorder, is in irreconcilable conflict with the legislative enactment on the subject, and in violation of the plain provision of the Constitution and the limitation prescribed to the taxing power; and is, on that

account, void and of no binding force, and affords no justification for the imprisonment of the applicant.

It is conceded that the writ of *habeas corpus* cannot be invoked for the purpose of correcting errors, or to subserve the purpose of an appeal or writ of error. Hurd on Hab. Corp. 333; *Perry* v. *The State*, 41 Texas, 490; Ex parte *Swartz*, 2 Texas Ct. App. 74, and authorities cited. The rule is otherwise when the proceedings sought to be inquired into are radical in their character, illegal, and void. Says Mr. Hurd: "Illegality is properly predicable of radical defects only, and signifies that which is contrary to the *principles* of law, as distinguished from *mere* rules of procedure. It denotes a complete defect in the proceedings." Hurd on Hab. Corp., 333, citing Tidd's Pr. 435.

The present case is almost identical with Ex parte *Gregory*, 1 Texas Ct. App. 753, and upon the principles held in that case the present case must be decided, and in the same manner. Because the proceedings under which the applicant is held are without authority of law and void, it is ordered that F. N. Butts, city marshal of the city of Houston, release, discharge, and set at liberty the applicant herein, the said James Slaren, so far as the charge against him herein is concerned.

*Ordered accordingly.*